Good morning, may it please the court, Fred Norton, a boy, chiller and flexner, I'll be Unlike other state and federal prisons, the Solano County Jail bans all group worship for all maximum security prisoners, that ban violates the religious land use and institutionalized persons act, it violates the free exercise clause, it violates California penal code section 4027. Is it your position that under no circumstances may a jail commander or prison warden ban group gatherings of inmates who are confined to maximum security portions of a jail or prison? No, that's not our position. This case arrives here on summary judgment. And the district court granted summary judgment to the defendant, notwithstanding three significant failures in the defendant's summary judgment motion. And our argument is that on the record that was presented to the district court, the court could not find that the defendant had met its burden of the movement for summary judgment. So there may be a permissible ban, but they simply didn't show a compelling justification or provide sufficient information to determine whether or not his rights were substantially impaired. Is that where the district court went around? That's correct. They did not make a sufficient showing in the first instance of the movement for summary judgment. And then once Mr. Green was required to come forward with evidence to counter their allegations, he in fact did so. And so he met his burden under Rule 56. There were genuine issues of material fact. It was not appropriate for the court to enter summary judgment. What was the genuine issue of material fact? On the issue of least restrictive means, under ARLUPA, the Religious Land Use and Institutionalized Persons Act, the total ban on group religious services was the least restrictive means of furthering an interest in jail security. The dispute of fact was that the defendant's argument was we cannot do this. There is no way short of a ban that we can further our interest in jail security because we simply don't have enough guards. Staffing levels don't permit it. Mr. Green's declaration directly contradicted that argument. Mr. Green's declaration, this is pages 70 to 71 of the record. He submits this declaration based on his own personal knowledge that he himself, with other maximum security inmates, was escorted to the law library for the purposes of engaging in legal research where they met in groups for up to an hour or two. This happened on a weekly basis and happened safely and without incident. That's a direct dispute of fact. The jail says we cannot do this. It's not possible. Mr. Green says not only can you do it, you have done it. And I've been there and I've seen it. I think Green said the guard took the group down, of which Green was a member, put them in the library area, locked the door, and then he returned to his other area. Well, he wouldn't know that if he was inside. He didn't know he was locked in. Mr. Green's declaration says that they were unsupervised. He doesn't say whether they were locked in. Sheriff Rourke did submit a declaration in support of the reply brief on summary judgment, an additional declaration. She had submitted one in connection with the original motion, and she attempted to directly refute Mr. Green's factual allegations. And she said, we don't do it that way. The way we do it here at the Solano County Jail is we take them one at a time and we lock them in the wall after. So that's the dispute. That's the dispute. And it's clear that this is a direct factual dispute. The defendants recognized it was a factual dispute. So shutting down, prohibiting entirely any gathering for religious purposes is a substantial burden on the exercise of religion by the prisoner in Green. That is correct. There's an issue of fact as to whether totally precluding gatherings in groups was the least restrictive means to accomplish the needs of the prison or the jail. That's correct. That's your case, isn't it? Well, that's one part of my case. And I should also note that because the government has the burden of satisfying least restrictive means under our LUPA, as this court held in War Soldier, it's not enough for the government to come in and say, here, we've identified a compelling interest. Jail security is a compelling interest. There's no dispute about that. But they have to show that the specific practice furthers that compelling interest. Now here, if Mr. Green's declaration is credited, and at this stage it has to be, Mr. Green has said, you don't need to do this. This is an arbitrary distinction. You're saying we can meet for purposes of having legal research in the library, but not meet for purposes of group worship. You let us do it some of the time, but not other times. That's an arbitrary distinction. And the third circuit in the Washington versus Clem case we cited in our 28J letter dealt with exactly this kind of a problem, where there's a jail policy that restricts religious practice, in that case access to literature, but they have an exemption for educational purposes. That was arbitrary. So that not only failed the least restrictive means test, it failed the requirement that it further a compelling governmental interest. Because if Mr. Green's allegations are credited, you don't need to do this. There's no connection. There's no rational connection between these two things. But the second problem with the defendant's case on least restrictive means is that they failed to show that they had specifically considered and rejected alternatives to a ban. And under War Soldier, they have to do that, because it's their burden. It's their burden not just as the party opposing summary judgment. It's their burden, I'm sorry, the party bringing the motion for summary judgment. It's their burden of persuasion at trial. And so just like the prison, the CDC and War Soldier, they have to show what did they do. Now, there's no discussion at all in the record of what their alternative measures were. For example, why is it not possible to provide one part-time maximum security guard to observe those prisoners who want to engage in group religious services once a week? That's what Mr. Green wanted. He wanted to meet once a week with other prisoners for Bible study. The jail says, we can't do this. It's simply impossible. There's no discussion of what it would cost. There's no discussion of the burden. There's no discussion of anything. That failure to consider and reject and provide evidence of considering and rejecting alternatives doesn't meet their burden. It doesn't mean they can't do it. It doesn't mean that they couldn't file a properly supported motion for summary judgment and prevail. But they didn't do it in this case. And so for that reason as well, the motion was defective. There's a third reason why the motion was defective on that particular ground, which I want to emphasize is the only argument defendants made in the court below was that they could satisfy strict scrutiny under our loop. The other problem is that other jails and prisons don't have this policy. Other jails across the country, we cited pages 31 and 32 of our brief. We submitted the Federal Bureau of Prisons manual. Other prisons allow maximum security prisoners to participate in group religious services. Now, certainly there are restrictions, but they don't have total bans. And as this court held in War Soldier, other circuits have held as well. The fact that other courts have allowed, I'm sorry, the fact that other prison systems have, with the same compelling interests, have allowed, made these accommodations, are able to make these accommodations, undermines the argument that there's no other way for us to do this, the least restrictive means argument. There's no other way, no less restrictive means. Other maximum security prisons are able to do it. So can the Solano County Jail. I also want to touch briefly on the issue of substantial burden. This court need not reach the question of whether or not this ban on religious practice was a substantial burden, because the defendants never made that argument at all in the district court. And the error in the district court was to reach the question, notwithstanding the fact the defendants had never raised it. Mr. Green had no obligation, as the party who was opposing summary judgment, to bring in evidence on an issue that's simply not raised. It's not raised, it's not argued, it's not in dispute. And that's clear from this court's decision in Nissan Fire. It's clear from the Supreme Court's decision in Addicus. The party moving for summary judgment, that's the party that puts the issues in. That's the party that lets the opposing party know, what do I have to do? Mr. Green had no notice that was at issue here. I don't understand, though. How can we get to an analysis of compelling interest and least restrictive means if we don't first conclude that this must be a substantial burden on a religious practice? Are you saying that it's basically conceded by the Solano County Jail because they didn't argue it? It's conceded for purposes of summary judgment, that's right. And it's no different from any other case. For example, take a fraud case. There's five elements of a common law fraud claim. If you move for summary judgment on the grounds that there are no damages resulting from the fraudulent statement, it may be the statements also are not material. It may be the statements were simply never made. But the party opposing summary judgment doesn't come in with their entire case in response to a targeted motion for summary judgment on one discrete issue. Now, that's not to say that the district court can't do something like what the court did here and say, well, I don't see any materiality here. I don't see substantial burden. Let's brief that. What do you have on that? And then there's notice, which is required, and an opportunity to respond and put in your evidence. And Mr. Green could have done that, or at least would have had an opportunity to do that. But he didn't have that opportunity. And so for this court to reach substantial burden, I'll finish my sentence. I see the red lights on. For this court to reach substantial burden would be unfairly prejudicial to Mr. Green, who never had a fair opportunity to meet that argument in the district court because the defendant never made that argument in the district court. Thank you. Thank you. Good morning, Your Honors. If it pleases the court, I am Martha Stringer. I represent the County of Solano. Could you speak up a little bit? I'm Martha Stringer. I represent the County of Solano and Lieutenant Peggy Rourke. And I wanted to deal with, I guess, first the issue of the law library. I do remember it was a while ago being in law school, and I don't think we met for group meetings at the law library. Doing legal research is far different from being in a group religious setting. Well, that may be so in your law school and mine, but the problem here is that we have an affirmation by the plaintiff that it is the practice at your client's jail to occasionally permit more than one maximum security inmate to use the library in an unsupervised setting. Apparently they're locked in the room that constitutes the library. And if that's the case, and apparently Lieutenant Rourke says that never happens, for purposes of summary judgment, why isn't that a genuine issue of material fact that's in dispute that is not appropriate for resolution on summary judgment? Well, Mr. Green says two things. At one point he says, I and other inmates were escorted to this law library by the maximum security guard, and he says nothing about being locked in. At another point he says he will prove at trial, through the testimony of guards and other inmates, that this happened. So I think a reasonable inference would be to go with the commander of the jail who knew what had happened, and that one at a time was taken not by the maximum security guard but by this rover guard to a very small law library and locked in. Can that inference be drawn on the summary judgment motion? Yes, I think it can. Because I think... The district court can make findings? The district court made findings about the use of the law library. The district court, I do not believe, made findings as to whether Mr. Green should be believed over Lieutenant Rourke or vice versa. But there was that dispute in the record. There was that dispute in the record. I do not believe it's a reasonable dispute, but even so, the law library was a tiny place for legal research. It is not used as a congregation area for group worship. And Mr. Green would not even identify what his faith was. Well, Mr. Green's declaration would lead to the inference that it can be so used, but the defendant's response is it cannot be so used. But isn't that a genuine issue of fact and dispute? Not when the evidence is taken as a whole, no. As a tiny piece, one can say any space in a jail could be used for the congregation of prisoners, for religious practice. But don't we look at the evidence as a whole at a trial rather than on summary judgment? But the point of summary judgment is to dispense with issues such as this so that we don't need to go to a trial on the issue. The problem I'm having with your response to Judge Alicorn's question is I look at Mr. Green's declaration at paragraphs 10 through 12 where he basically alleges that he and other inmates from the maximum security unit were taken down the hall at least once a week and left for up to two hours unattended in group settings. And then I look at the declaration of the jail commander, Lieutenant Rourke, who says that never happened. You're basically asking us to accept the veracity of Lieutenant Rourke and to discount the truthfulness of what Mr. Green swears in his declaration, and I don't think we can do that on summary judgment. Let's assume that we go with Mr. Green's and say that if there's a question of fact, we still have the issue of, and the district court did read it. We have to, don't we? Oh, right. We will. I hate to give it up, but we will. I know. You're having an argument to me. That's why I went to the law library. Okay. The district court addressed that issue and said even if that were the case, it still does not deal with the issues of jail security and compelling interest by least restrictive means. The law library is small. They were locked in, and Mr. Green does not dispute that they were locked in, so no guard was necessary to watch them. He said, he never said what numbers were taken, but I think in one area he said he and another. So two people were taken by a guard, locked in. The guard was then free to leave. Lieutenant Roark dealt with the guard issue by saying we have a guard in the maximum security area and we have this rover guard. It was the rover guard who took them, locked them in, and left them. They were supposed to be studying and looking at law books and doing research for the summary judgment. You say they. She says what? Let's assume it is they. I'm going with that assumption. How can I assume that if I'm looking at paragraph four of Lieutenant Peggy Roark's supplemental declaration where she says inmates housed in maximum security units may use the law library. They are escorted one at a time by a rover guard to the law library, and they are locked into the library for up to one hour at a time. Only one inmate at a time is permitted to be in the law library. Isn't that directly contradictory to what I read in paragraphs 10 through 12 of Mr. Green's declaration? It is, but what I'm saying is let's assume or agree that there is a question of fact as to whether one or more is taken to the law library. We do know that because there's no contradiction from Mr. Green that they are locked into this space and no guard is there to continue to supervise them. What he's asking for is for a group, we don't know how large, because we don't know who belongs to this group of his, and occupy a space. Presumably his group has to come from the same universe, which is the inmates who are confined in the maximum security unit in his module. Correct. We don't know, because he won't identify what religion he is, how large this group may be. Well, let's assume that it is a group of two or more. All right. Okay, so the problem I now have with your argument is that if you can see that there's a conflict on this fact point and that there are meetings of two or more in the library where inmates are unsupervised, doesn't that mean that if the jail commander says, I'm not going to allow inmates to use the law library as a group of two or more for religious purposes, that we have, I'll use the word discrimination loosely, but basically the refusal to allow them to gather for religious purposes is different treatment than permitting them to gather as a group to use the law library for research. No, I don't believe, I believe there is a rational difference. And that's because it's a library and it's not used for group religious purposes? Getting back to your first point? That's because she testified it is a very small space. They use a classroom, of which there is one, for group religious services, but they also have to be supervised because a group religious service requires someone to lead it, unless Mr. Green is saying any group of maximum security prisoners who wish to congregate for religious services can simply do so without supervision, without a leader. And that, I think, would go well beyond what a jail such as Clay Bank in Toronto County is required to do. So they need a leader, someone to supervise, probably the same person. Are these facts in the record? That they need a leader? There are some religious groups that do not have a leader, they just pray. That's correct. Do we know about the situation here? No, we don't. Mr. Norton says that the substantial burden issue or question is conceded by you for the purposes of this summary judgment motion. Is that correct? That isn't correct. We conceded that we had no argument with the sincerity of Mr. Green's beliefs. I'm sorry, I can't hear you. We conceded that we had no argument with the sincerity of his beliefs, but that is a different question from whether the ban on group worship raised a substantial burden. And we did bring it up in the motion. And the court addressed it, and Mr. Green addressed it in his opposition. And I actually just thought of this yesterday, but again, I don't know how it could be a substantial burden on his religious exercise if he wouldn't even identify what his religion was. Thank you, Mr. Mr. Norton, I'll give you a minute for rebuttal. Just very quickly on rebuttal, with respect to the concession question, it's an implicit concession, not an express one. And it's implicit because, again, summary judgment practices, you bring your motion on the issues that you believe that you can win on summary judgment. You don't bring your motion on every single issue. And it's conceded solely for purposes of summary judgment. They're free to raise it at any other point in the trial or in the case. But by not arguing at all substantial burden, they conceded it for purposes of summary judgment. The extent to which they raised it in the brief on their motion for summary judgment is discussed in our briefs. It's in a footnote to their argument on qualified immunity, in which they say that it's doubtful whether he could show substantial burden. They don't cite a case, and they don't discuss the record. That's not argument. When people do that in this court, that's called waiver. It's not an argument that Mr. Green should have had to respond to. Thank you. Thank you, both counsel. The case just argued is submitted. And, Mr. Norton, on behalf of the court, I want to thank you for accepting the pro bono appointment in this matter. Your briefing and your argument were very helpful, and we appreciate it. All right, the case just argued is submitted. And we'll next hear argument in James Ellett v. Selby-Stanislaus et al.
judges: Alarcon, Thompson, Tallman